**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| LEON STAMBLER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 2:12-cv-608 |
| v. | § | |
| | § | **JURY TRIAL DEMANDED** |
| ALLY FINANCIAL INC., et al., | § | |
| | § | **LEAD CASE** |
| Defendants. | § | |
| | § | |

**DEFENDANTS' JOINT MOTION TO STAY PENDING *INTER PARTES* REVIEW**

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ....................................................................................................3

        A.      The Defendants ...........................................................................................3

        B.      Stambler and the Asserted Patents..............................................................5

        C.      The Timing of the IPR Petitions ................................................................6

III.    ARGUMENT ..........................................................................................................7

        A.      The First Factor:  Stambler Will Not Suffer Undue Prejudice or Tactical
                Disadvantage...............................................................................................8

        B.      The Second Factor:  The IPRs Will Simplify the Issues .....................................11

        C.      The Third Factor:  The Timing Favors a Stay ......................................................16

        D.      The Totality of Circumstances Favors a Stay.......................................................17

IV.     CONCLUSION......................................................................................................18

# TABLE OF AUTHORITIES

FEDERAL CASES

*Achates Reference Publ'g, Inc. v. Symantec Corp.*,
    No. 2:11-CV-294-JRG-RSP, D.E. No. 419 (E.D. Tex. May 31, 2013) (Ex. A).......................2

*BarTex Research, L.L.C. v. FedEx Corp.*,
    611 F. Supp.2d 647 (E.D. Tex. 2009)....................................................................................3

*Bosch Healthcare Systems, Inc. v. ExpressMD Solutions, LLC*,
    No. C 12-00068 JSW, D.E. No. 82 at 5 (N.D. Cal. Feb. 27, 2013) (Ex. F)............................13

*Datatreasury Corp. v. Wells Fargo & Co.*,
    490 F. Supp. 2d 749 (E.D. Tex. 2006).............................................................................8, 17

*Dennco, Inc. v. Cirone*,
    1995 U.S. Dist. LEXIS 9988 (D.N.H. July 12, 1995) ...................................................... 14

*e-Watch, Inc. v. ACTi Corporation, Inc.*,
    No. SA-12-CA-695-FB, D.E. No. 42 at 17-20 (W.D. Tex. August 9, 2013) (Ex. E).............13

*Fasano v. Fed. Reserve Bank of N.Y.*,
    457 F.3d 274 (3d Cir. 2006) (Federal Reserve Banks are "the foundation for the
    federal reserve system" and are "intimate parts of the Government's fiscal structure.")..........4

*Fed. Reserve Bank of St. Louis v. Metrocentre Improv. Dist. # 1*,
    657 F.2d 183 (8th Cir. 1981), aff'd, 455 U.S. 995 (1982)........................................4

*First Agric. Nat'l Bank of Berkshire County v. State Tax Comm'n*,
    392 U.S. 339 (1968) (Marshall, J., dissenting) (Federal Reserve Banks are the
    "monetary and fiscal agents of the United States") ...................................................4

*Fresenius USA, Inc. v. Baxter Intern., Inc.*,
    2013 WL 3305736 (Fed Cir. 2013).....................................................................14

*Genzyme Corp. v. Cobrek Pharms., Inc.*
    2011 WL 686807 (N.D. Ill. Feb. 17, 2011) ................................................................ 14

*GPAC, Inc. v. D.W.W. Enter., Inc.*,
    144 F.R.D. 60 (D.N.J. 1992)...........................................................................8, 17

*Implicit Networks, Inc. v. Advanced Micro Devices, Inc.*,
    2009 WL 357902 (W.D. Wash. Feb. 9, 2009).....................................................9

*Innolux Corp. v. Semiconductor Energy Lab. Co.*,
    Case No. IPR2013-00064 at 10 (P.T.A.B. April 30, 2013) (Ex. G) ...................................13

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936)...............................................................................................7, 8

*Network-1 Security Solutions v. Alcatel-Lucent USA Inc.*,
   No. 6:11-CV-492-LED-JDL, ECF No. 410 (E.D. Tex. Mar. 5, 2013) (Ex. B) ......................2

*Photoflex Products, Inc. v. Circa 3 LLC*,
   2006 WL 1440363 (N.D. Cal. May 24, 2006) ...........................................................8

*Pi-Net Int'l, Inc. v. Hertz Corp.*,
   2013 U.S. Dist. LEXIS 81570 (C.D. Cal. June 5, 2013) ......................................2, 12, 15, 16

*Regents of the Univ.of Mich. v. St. Jude Med., Inc.*,
   2013 WL 2393340 (E.D. Mich. May 31, 2013)..........................................................2

*Roblar Mktg. Group, Inc. v. GPS Indus., Inc.*,
   633 F. Supp. 2d 1341 (S.D. Fla. 2008) ...................................................................9

*Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*,
   2012 WL 7170593 (C.D. Cal. Dec. 19, 2012) ................................................... passim

*Soverain Software LLC v. Amazon.com, Inc.*,
   356 F. Supp. 2d 660 (E.D. Tex. 2005) (Davis, J.) ...............................................7, 8

*Spa Syspatronic, AG v. VeriFone, Inc.*,
   2008 WL 1886020 (E.D. Tex. Apr. 25, 2008) (Love, J.) ....................................2, 11, 12, 13

*Spa Syspatronic, AG v. Verifone, Inc.*
   No. 2:07-cv-00416-JDL, Order, ECF No. 79 (E.D. Tex. Apr. 2, 2008) (Love, J.) (Ex.
   D) .............................................................................................................7

*Stambler v. RSA Security, Inc., et al*,
   No. Civ. A. 01-0065-SLR, 2003 WL 22749855 (D. Del. Nov. 14, 2003) ..............................6

*Tierravision, Inc. v. Google, Inc.*,
   2012 WL 559993 (S.D. Cal. Feb. 21, 2012)..............................................................16

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
   2013 WL 1876459 (N.D. Cal. May 2, 2013) ............................................................8

**STATUTES**

12 U.S.C. § 290......................................................................................................4

12 U.S.C. § 341......................................................................................................4

12 U.S.C. § 391......................................................................................................4

35 U.S.C. §§ 311-319 .............................................................................................6

35 U.S.C. § 314(a) ..............................................................................................11

35 U.S.C. § 315(b) ..............................................................................................11

35 U.S.C. § 316(a)(11)...........................................................................................3

Federal Reserve Act of 1913 ("FRA"), 12 U.S.C. § 221 *et seq*......................4

**OTHER AUTHORITIES**

37 C.F.R. § 42.15 ...................................................................................................7

37 C.F.R. § 42.24 ...................................................................................................7

157 Cong. Rec. S5429 (daily ed. Sept. 8, 2011).................................................16

157 Cong. Rec. S952 (daily ed. Feb. 28, 2011)....................................................6

## DEFENDANTS' JOINT MOTION TO STAY PENDING *INTER PARTES* REVIEW

Defendants Federal Reserve Bank of Atlanta, Federal Reserve Bank of Boston, Federal Reserve Bank of Chicago, Federal Reserve Bank of Cleveland, Federal Reserve Bank of Dallas, Federal Reserve Bank of Kansas City, Federal Reserve Bank of Minneapolis, Federal Reserve Bank of New York, Federal Reserve Bank of Philadelphia, Federal Reserve Bank of Richmond, Federal Reserve Bank of San Francisco, and Federal Reserve Bank of St. Louis (collectively "the Federal Reserve Banks"), as joined by Defendants Ally Financial Inc., Ally Bank, Ameriprise Financial, Inc., Ameriprise Bank, FSB, Fifth Third Bancorp, Fifth Third Bank, First Citizens Bancshares, Inc., First Citizens Bank & Trust Company, First National of Nebraska, First National Bank of Omaha, and The Northern Trust Company (collectively, with the Federal Reserve Banks, hereinafter referred to as "Defendants"), by and through undersigned counsel, respectfully bring this joint motion to stay the proceedings pending *inter partes* review of U.S. Patent Nos. 5,793,302 ("the '302 Patent") and 5,936,541 ("the '541 Patent").[1]

## I.      INTRODUCTION

The Federal Reserve Banks, all instrumentalities of the United States, have collectively filed four (4) petitions for *inter partes* review ("IPR") with the United States Patent and Trademark Office ("PTO") challenging the validity of the '302 and '541 patents.  The IPR petitions, two filed on June 11, 2013, and two more filed on July 1, 2013, each set forth bases for the cancellation of all claims from the '302 and '541 patents asserted against the Defendants.[2]

---

[1] The Defendants moving for a stay comprise all Defendants from the following seven lawsuits: (a) Civil Action No. 2:12-cv-00608; (b) Civil Action No. 2:12-cv-00611; (c) Civil Action No. 2:12-cv-00673; (d) Civil Action No. 2:12-cv-00675; (e) Civil Action No. 2:12-cv-00676; (f) Civil Action No. 2:12-cv-00677; and (g) Civil Action No. 2:12-cv-00679.

[2] The Federal Reserve Banks note that revised IPR petitions were filed in IPR2013-00409 and IPR2013-00406 on July 16, 2013 to address ministerial procedural issues and that these revisions do not alter the PTO's timeline for acting on the petitions.

Accordingly, Defendants jointly seek to stay the instant litigation in order to avoid unnecessary expenditure of resources by the parties and the Court.

Since the Leahy-Smith America Invents Act ("AIA") was enacted, numerous federal courts have granted motions to stay pending an IPR.[3]  These courts have based their decisions in part on the strengthened IPR provisions, which set a strict timeline for considering validity challenges.[4]  Even before the availability of the IPR procedure, this Court determined that it "generally makes sense to await the conclusion of a reexamination before resuming litigation."[5]  This logic applies with equal if not greater force to the new, faster moving IPR proceeding.

Courts "generally look favorably on granting stays pending reexamination" where the stay is unlikely to prejudice the plaintiff and the motion is filed sufficiently early in the case.[6]  With respect to prejudice, Stambler cannot suffer material prejudice from a stay because all asserted patents have **<u>expired</u>**.  This means Stambler cannot obtain any equitable relief, and to the extent Stambler obtains any judgment for past infringement, money damages will provide full compensation.  Moreover, there is no chance of undue prejudice to Stambler due to delay.

---

[3] *See, e.g., Pi-Net Int'l, Inc. v. Hertz Corp.*, 2013 U.S. Dist. LEXIS 81570 (C.D. Cal. June 5, 2013); *Regents of the Univ.of Mich. v. St. Jude Med., Inc.*, 2013 WL 2393340 (E.D. Mich. May 31, 2013); *Achates Reference Publ'g, Inc. v. Symantec Corp.*,  No. 2:11-CV-294-JRG-RSP, D.E. No. 419 (E.D. Tex.  May 31, 2013) (Ex. A); *Network-1 Security Solutions v. Alcatel-Lucent USA Inc.*, No. 6:11-CV-492-LED-JDL, ECF No. 410 (E.D. Tex.  Mar. 5, 2013) (Ex. B); *Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*, 2012 WL 7170593, at *3-4 (C.D. Cal. Dec. 19, 2012) (granting motion to stay pending PTO's decision on whether to grant petitions for inter partes review upon reasoning that "if the [PTO] rejects the inter partes requests, the stay will be relatively short").

[4] *See, e.g.*, *Semiconductor* 2012 WL 7170593, at *3 (noting that the timing is "significantly less than the delay caused by the old [*inter partes* reexamination ("IPX")] procedure").

[5] *Spa Syspatronic, AG v. VeriFone, Inc.*, 2008 WL 1886020, at *3 (E.D. Tex. Apr. 25, 2008) (Love, J.).

IPRs have a one-year statutory timeline, which is far less than the average pendency for *inter partes* reexaminations ("IPX") or *ex parte* reexaminations.[7]  A stay would, however, serve a compelling public interest.  It prevents unnecessary expenditure of time and resources by this Court and all Defendants—a group uniquely situated in that it includes the twelve Federal Reserve Banks (the operating arms of the central bank of the United States)—until the PTO resolves fundamental validity issues surrounding Stambler's **<u>expired</u>** patents.  With respect to timing, the case remains at an early stage.  No depositions have occurred, and the *Markman* hearing and the earliest trial dates are set for next year (January 2014 and July 2014, respectively).  For these reasons, as well as the additional facts and precedent addressed herein, a stay of this action is warranted pending the results of concurrent IPR proceedings.

## II.   BACKGROUND

### A.  The Defendants

The Defendants are aware that Stambler previously filed several patent infringement suits in this District.  However, it is important for the Court to understand that the current Defendant group is differently situated than prior litigants in Stambler cases.

---

[6] *Spa Syspatronic*, 2008 WL 1886020, at *1.  As noted by the *Semiconductor* court, because IPR replaced IPX, the three-factor analysis previously applied to IPX stays should also be applied to IPR stays.  *Semiconductor*, 2012 WL 7170593 at *1 n.1.

[7] The Defendants are aware that courts in this District, in the context of *inter partes* reexamination ("IPX"), have factored in what was characterized as the "extreme delay" for IPX proceedings to conclude.  In particular, one opinion noted a study finding that IPXs took on average 43.5 months to conclude where the patentee contested the matter.  *BarTex Research, L.L.C. v. FedEx Corp.*, 611 F. Supp.2d 647, 651 (E.D. Tex. 2009).  This is no longer a concern.  The new IPR procedure must conclude within one year from granting the petition, absent certain exceptions.  35 U.S.C. § 316(a)(11).  Any appeal time is also streamlined, since IPRs are appealed directly to the Federal Circuit (as opposed to the prior IPX procedure which required appeal first to the Board of Patent Appeals and Interferences and then to the Federal Circuit).

More specifically, Stambler's seven pending patent litigation lawsuits span twenty-three

defendants, twelve of which are Federal Reserve Banks.  The Federal Reserve Banks were

established under the Federal Reserve Act of 1913 ("FRA"), 12 U.S.C. § 221 *et seq*.  The Federal

Reserve Banks, together with the Board of Governors of the Federal Reserve System ("Board of

Governors") and the Federal Open Market Committee ("FOMC"), make up the Federal Reserve

System—the  nation's central bank.  The Federal Reserve Banks specifically constitute the

central bank's operational components, and each Federal Reserve Bank performs a myriad of

important public functions, as prescribed by federal law, designed to develop, implement and

foster monetary and fiscal policies.[8]  Importantly, the Federal Reserve Banks do not operate as

typical profit-driven corporations, but instead transfer their net earnings to the U.S. Treasury—in

effect, the United States taxpayers.  *See* 12 U.S.C. § 290.

The twelve Federal Reserve Banks provide banking services to depository institutions

(including the other Defendants) and to the federal government.  *See* 12 U.S.C. § 391.  For

depository institutions, they maintain accounts and provide various payment services, including

collecting checks, electronically transferring funds, and distributing and receiving currency and

coin.  *See* 12 U.S.C. § 341 (Eighth).  For the federal government, the Federal Reserve Banks act

as fiscal agents, paying Treasury checks; processing electronic payments; and issuing,

transferring, and redeeming U.S. government securities.  *See* 12 U.S.C. § 391.

Since the Federal Reserve's inception, the Federal Reserve's active involvement in

---

[8] See *First Agric. Nat'l Bank of Berkshire County v. State Tax Comm'n*, 392 U.S. 339, 356 (1968)
(Marshall, J., dissenting) (Federal Reserve Banks are the "monetary and fiscal agents of the
United States"); *Fed. Reserve Bank of St. Louis v. Metrocentre Improv. Dist. # 1*, 657 F.2d 183,
185 (8th Cir. 1981), aff'd, 455 U.S. 995 (1982) (Through their employees, Federal Reserve
Banks carry out the "general fiscal duties of the United States."); *Fasano v. Fed. Reserve Bank of
N.Y.*, 457 F.3d 274, 277–78 (3d Cir. 2006) (Federal Reserve Banks are "the foundation for the
federal reserve system" and are "intimate parts of the Government's fiscal structure.")

payments and in developing the critical national infrastructure supporting payments has played an integral part in the development of the nation's financial system.  The Federal Reserve Banks' participation in the United States payments system has served the nation well, contributing directly and indirectly to widespread public confidence in a payments system that is quick, sure, and efficient.  Maintaining the national payment infrastructure's viability and security and acting as the fiscal agents for the federal government are critically important tasks that require substantial resources and coordination between all twelve Federal Reserve Banks—resources currently being diverted to defending this lawsuit.  And while no party has unlimited means to sustain civil litigation, the consequences of large scale patent infringement actions against the Federal Reserve Banks are especially onerous in that the ultimate cost falls on United States taxpayers.  It is out of desire to protect those resources, and thus best serve the taxpaying public, that the Federal Reserve Banks have for the first time initiated a PTO proceeding challenging the validity of an issued patent.

### B.  Stambler and the Asserted Patents

Stambler, although an individual, functions as a non-practicing entity in that he focuses on licensing a family of patents for which he is the purported sole inventor.[9]  Stambler's patents describe the "field of the invention" as relating "generally to secure transaction systems and, more particularly … a method and apparatus for authenticating documents, records and objects as well the individuals who are involved with them …."  (Ex. C, '302 Patent col. 1, ll.16-20.)  Stambler has sued dozens of companies in various district courts, including more than one hundred (100) in this District alone.  Notably, Stambler has never litigated any infringement claims to trial in this District, and in the one instance where Stambler did carry infringement

claims under these patents to trial (a 2001 District of Delaware case), the jury rendered a non-infringement verdict against Stambler.[10]  Stambler does not provide, and has never provided, products or services to any industry, let alone any products or services that would compete with the Defendants.  In short, Stambler's entire focus is filing infringement suits asserting his now expired portfolio of patents to obtain litigation-driven royalties.

### C.  The Timing of the IPR Petitions

Stambler filed suit against the Federal Reserve Banks on September 21, 2012,[11] but almost seven (7) months passed before Stambler served Patent L.R. 3-1 disclosures of infringement contentions on April 5, 2013.  Therein Stambler provided the first identification of specific '302 and '541 claims that he intends to assert against the Federal Reserve Banks.[12]  That April 5th disclosure of asserted claims had special bearing on the Federal Reserve Banks' ability to bring meaningful IPR petitions due to procedural differences between IPR and the IPX proceedings it replaced.

When Congress replaced the former IPX procedure with an improved IPR procedure,[13] its stated intent was to provide a "faster, less costly alternative [] to civil litigation to challenge patents."[14]  But these enhancements come at a price.  IPR petitions carry significantly larger

---

[9] That family includes the '302 Patent, '541 Patent, and U.S. Patent No. 5,974,148 ("the '148 Patent").

[10] *Stambler v. RSA Security, Inc.*, *et al*, No. Civ. A. 01-0065-SLR, 2003 WL 22749855 (D. Del. Nov. 14, 2003).

[11] Stambler also filed suit against the Ally Defendants on September 21, 2012.  He filed suit against the remaining Defendants on October 23, 2012.

[12] Stambler similarly served infringement contentions against the remaining Defendants on April 5, 2013.

[13] 35 U.S.C. §§ 311-319.

[14] 157 Cong. Rec. S952 (daily ed. Feb. 28, 2011) (statement by Sen. Grassley).

filing fees than prior reexamination requests ($27,200 per IPR petition versus $8,800 for IPX), are limited to sixty pages in length (reexamination requests had no page limits), and are typically limited to no more than 20 claims of one patent (reexamination requests carried no claim limits).[15]  A party seeking to initiate IPR must therefore either (1) file petitions that target specific claims it reasonably believes will bear on the litigation, or (2) incur the potentially exorbitant fees and costs necessary to challenge every single claim within an asserted patent.[16] Here, the complete listing of asserted claims was not known until April 5th. Thereafter, the Federal Reserve Banks promptly began preparing IPR petitions and timely filed their first round of petitions on June 11, 2013 (just nine weeks later).[17]

## III.   ARGUMENT

A district court has the inherent power to control its own docket, including the power to stay proceedings.  *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005) (Davis, J.); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of

---

[15] A party filing an IPR petition may address more than 20 claims by paying an additional $200 for each additional claim. 37 C.F.R. § 42.15.  The sixty page limit may not be enlarged, however, without a motion for waiver of the page limits, which must show the waiver is in the interests of justice.  37 C.F.R. § 42.24.  The page limits reduce the number of claims a party may effectively challenge in a single IPR petition.

[16] By way of specific example, Stambler's '541 and '302 patents include 54 and 91 claims, respectively, for a total of **145 claims**.

[17] The PTO has yet to grant any of the IPR petitions filed by the Federal Reserve Banks, and thus has not initiated IPR of either the '302 patent or '541 patent.  Defendants move now for a stay in order to have this motion fully briefed by the time by which the Federal Reserve Banks expect the PTO to have granted the IPRs.  *See Spa Syspatronic, AG v. Verifone, Inc*. No. 2:07-cv-00416-JDL, Order, ECF No. 79 (E.D. Tex. Apr. 2, 2008) (Love, J.) (Ex. D) (taking under advisement motion that was fully briefed before the PTO granted an *ex parte* reexamination).  Moreover, the Court may institute a stay before the PTO grants the IPRs.  *See Semiconductor*, 2012 WL 7170593, at *3-4 (granting stay before PTO granted IPR upon reasoning that "if the [PTO] rejects the *inter partes* requests, the stay will be relatively short").

the causes on its docket with economy of time and effort for itself, for counsel, and for litigants").  Optimal management of the Court's docket "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."  *Landis* at 254–55.   In deciding whether to stay litigation pending IPR, courts primarily consider three factors.[18]  They are: (1) whether a stay will unduly prejudice or present clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and the trial of the case, and (3) whether discovery is complete and whether a trial date has been set.  *Soverain Software*, 356 F. Supp. 2d at 662.[19]   However, the Court's inquiry is not limited to these three factors alone.  Additionally, courts consider the totality of the circumstances surrounding each individual case.  *See Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 2013 WL 1876459, at *2 (N.D. Cal. May 2, 2013).   In this case, all three factors, as well as the totality of the circumstances, overwhelmingly favor a stay pending IPR of the '302 and '541 patents.

### A.  The First Factor:  Stambler Will Not Suffer Undue Prejudice or Tactical Disadvantage

Stambler will suffer no undue prejudice if the Court stays the case.  *See Photoflex*

---

[18] As noted above and as noted by the *Semiconductor* court, because IPR replaced IPX, the three-factor analysis previously applied to IPX stays should also be applied to IPR stays. *Semiconductor*, 2012 WL 7170593, at *1 n.1.

[19] District courts have also noted a number of other advantages in granting a stay to allow the PTO to determine the validity of the patent, including: (1) all prior art presented to the court will have been first considered by the PTO with its particular expertise, (2) many discovery problems relating to the prior art can be alleviated by the PTO examination, (3) in those cases resulting in effective invalidity of the patent, the suit will likely be dismissed, (4) the outcome of the reexamination may encourage a settlement without further use of the Court's resources, (5) the record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation, (6) issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination, and (7) the cost will likely be reduced both for the parties and the court. *See Datatreasury Corp. v. Wells Fargo & Co.*, 490 F. Supp. 2d 749, 754 (E.D. Tex. 2006); *GPAC, Inc. v. D.W.W. Enter., Inc.*, 144 F.R.D. 60, 63 (D.N.J. 1992).

*Products, Inc. v. Circa 3 LLC*, 2006 WL 1440363, at *2 (N.D. Cal. May 24, 2006) ("The delay inherent to the reexamination process does not constitute, by itself, undue prejudice.").  Stambler will not suffer any harm from any Defendant's continued use of the accused products because Stambler is an individual who does not make, and has never made, any product or service that practices the patents-in-suit.  Stambler's sole focus is licensing (via litigation) a single portfolio of **<u>expired</u>** patents, a circumstance that limits him to seeking one remedy—money damages for alleged past infringements that become increasingly remote with each passing day.  *See Implicit Networks, Inc. v. Advanced Micro Devices, Inc.*, 2009 WL 357902, at *3-4 (W.D. Wash. Feb. 9, 2009) (holding that a technology licensing company "cannot be prejudiced by a stay because monetary damages provide adequate redress for infringement" and noting that courts have "consistently found" accordingly); *Roblar Mktg. Group, Inc. v. GPS Indus., Inc.*, 633 F. Supp. 2d 1341, 1347 (S.D. Fla. 2008) (finding "no material prejudice" due to the stay pending reexamination where patentee does not produce a product, has no substantial operations, and "appears to exist only as a holding company whose only asset is the [patent in suit]").  In short, even if the asserted patents are ultimately found valid and infringed, there is no chance Stambler will suffer any harm, nor will he lose the benefit of his one available remedy, during the brief time required to resolve the IPR proceedings.

Assuming, *arguendo*, that Stambler could fashion some claim of personal prejudice, Stambler's individual concerns pale when weighed against the aggregate time, attention, and financial resources all Defendants must expend to defend the suit.  And this is not to mention that a stay would serve the substantial public interest of avoiding unnecessary litigation against the central bank of the United States.  The Federal Reserve Banks, after paying their expenses, turn over their earnings to the United States Treasury – in effect the United States taxpayers.  Thus,

all financial resources that the Federal Reserve Banks are forced to divert towards defending this suit would otherwise be returned to the Treasury for taxpayer benefit.

Stambler's inability to claim prejudice is compounded by his failure to pursue his claims against the Federal Reserve Banks—or any of the other Defendants—with any urgency.  The '302 and '541 patents have the same specification as, and thus share an alleged priority date with, a patent application Stambler filed on November 17, 1992 (more than twenty years ago). The '302 and '541 patents themselves issued in August 1998 and August 1999, respectively. This means that Stambler's patents were in force **thirteen years** before he filed suit against the Federal Reserve Banks or the other Defendants, lawsuits he delayed filing against the Federal Reserve Banks and the Ally Defendants until just **56 days** before both the '302 and '541 patents expired on November 17, 2012.[20]  Moreover, at no time prior to filing suit did Stambler make any effort to contact or pursue any licensing initiative with any of the Defendants, including the Federal Reserve Banks.  All of this despite the fact that the Defendants' accused products are fully within the public view, and despite the fact that the Federal Reserve Banks in particular have a universally known mandate to provide banking services to both the Federal Government and depository institutions throughout the United States (*i.e.*, many of the very same banking entities Stambler has spent years suing in this District).  If Stambler had actually believed he has suffered real injury from the Federal Reserve Banks' use of their accused products, one would reasonably have expected Stambler to take action many years before now.

Stambler also cannot claim that the IPR filings lacked diligence. The IPR petitions were substantially driven by Stambler's identification of asserted claims in the April 5, 2013 infringement contentions, and two IPR petitions challenging all asserted claims from the '302

and '541 patents were filed a mere two months afterwards.  It is also indisputable that the Federal

Reserve Banks acted diligently in filing their IPR petitions within the statutory period specified

by 35 U.S.C. § 315(b).  *See Semiconductor*, 2012 WL 7170593, at *3-4 (granting stay where

defendant filed IPR petition "a mere three to four months" after receiving plaintiff's

infringement contentions).  Finally, the Defendants have moved well before the January 2014

*Markman* hearing or completion of significant discovery, all of which weighs in favor of

granting a stay.  *See Spa Syspatronic*, 2008 WL 1886020, at *2 n.2

### B.  The Second Factor:  The IPRs Will Simplify the Issues

Under the new IPR procedures, the threshold for initiating review is elevated from a

"significant new question of patentability"—the standard for IPX—to a higher standard requiring

petitioners to present information showing that their challenge has a "reasonable likelihood of

success."  35 U.S.C. § 314(a).  This new, elevated standard results in an "even higher likelihood

than under the prior standard that the issues in this action will be simplified."  *See*

*Semiconductor*, 2012 WL 7170593, at *3.

Furthermore, this Court has noted other factors in the context of IPX—equally applicable

to IPR— that tend to streamline the issues for litigation.  For example, this Court has indicated

that the probability of simplifying issues for trial rises with the proportion of claims that are

common to both the litigation and the IPR.  *Spa Syspatronic*, 2008 WL 1886020, at *3.  In

addition:

> Even if the PTO does not modify any of the claims, the reexamination still potentially
> focuses the issues in the case by either eliminating or validating some of the parties'
> present disputes over the claim terms.   Also, claim construction will ultimately be
> simplified because statements made during the reexamination become part of the

---

[20] Stambler's lawsuits filed against the remaining Defendants on October 23, 2012 were filed
only **25 days** before the '302 and '541 patents expired on November 17, 2012.

11

prosecution history, which allows a full development of the intrinsic evidence to be considered by the Court.

*See Spa Syspatronic*, 2008 WL 1886020, at *3 (internal citations omitted); *see also Pi-Net Int'l, Inc. v. Hertz Corp.,* 2013 U.S. Dist. LEXIS 81570 at *6 (C.D. Cal. June 5 2013) (granting a stay pending IPR and noting such a stay "could eliminate the need for trial if the claims are cancelled or, if the claims survive, facilitate trial by providing the court with expert opinion of the PTO and clarifying the scope of the claims.") (internal citations omitted).

The benefits of "PTO guidance" and the attendant simplification of issues for trial will likewise be realized here.  The pending IPR petitions address **every** claim of the '302 and '541 patents that is asserted against the Federal Reserve Banks, and all other Defendants, across Stambler's seven pending litigations.   The only asserted Stambler patent not subject to the IPR petitions, the '148 Patent, is asserted in only **one** suit (against the two Ally defendants). Significantly, Stambler asserted but four (4) claims from the '148 patent against the Ally Defendants, as compared to a total of 33 claims from the '302 Patent and '541 Patent, which Stambler asserted against all Defendants (including the Ally Defendants).  This means that the Federal Reserve Banks' IPR petitions make 33 of 37 (or 89%) of all of Stambler's asserted claims across seven pending suits potentially subject to cancellation, as shown by the following chart:

| Asserted Claims From '302 Patent (all Defendants) | Asserted Claims from '541 Patent (all Defendants) | Asserted Claims from '148 Patent (Ally Defendants only) | Total Number of Asserted Claims (all patents and Defendants) | Total Number of Asserted Claims subject to IPR Proceedings | Percentage of Asserted Claims subject to Potential cancellation |
|---|---|---|---|---|---|
| 7, 8, 31, 33, 34, 41-48, 51-56<br><br>Total:  19 | 20, 24, 26-28, 31, 32, 34, 35, 37, 38, 40, 46, 50<br><br>Total:  14 | 28, 31-33<br><br><br><br>Total:  4 | 37 Claims | 33 Claims | 89% (33 of 37 asserted claims) |

Further increasing the opportunity for simplification is that the '148 patent shares a common specification with the '302 and '541 patents, and the claims of all three patents recite numerous common limitations that will be subject of claim construction disputes before the PTO and this Court.  Significantly, a Magistrate Judge in the Western District of Texas recently recommended staying an entire case even though one of the patents at issue in that case was not the subject of an IPR proceeding and even though it was not yet known whether the PTO would initiate IPR proceedings regarding the three other patents-in-suit.  *See e-Watch, Inc. v. ACTi Corporation, Inc.*, No. SA-12-CA-695-FB, D.E. No. 42 at 17-20 (W.D. Tex. August 9, 2013) (Ex. E); *see also Bosch Healthcare Systems, Inc. v. ExpressMD Solutions, LLC*, No. C 12-00068 JSW, D.E. No. 82 at 5 (N.D. Cal. Feb. 27, 2013) (Ex. F) (staying case where one of the patents-in-suit was not subject to a request for reexamination with the Court noting that "there is no requirement that reexamination resolve all issues in a case in order to warrant a stay").

The *Spa Syspatronic* court's observation that PTO proceedings "eliminat[e]" disputes and result in "simplified" claim construction applies with even greater force where, as here, the subject patents have expired.[21]  This is because IPR procedures prohibit Stambler from amending any of his claims to overcome rejection.  *Innolux Corp. v. Semiconductor Energy Lab. Co.*, Case

No. IPR2013-00064 at 10 (P.T.A.B. April 30, 2013) (noting that "expired claims are not subject to amendment") (Ex. G).  The claims will consequently either be confirmed or invalidated, and if finally invalidated via IPR (with affirmance of invalidity  by the Federal Circuit) before a final, non-appealable judgment can be reached in Stambler's pending district court litigations, the Court will be required to dismiss any cause of action based on the invalidated claims as moot. *Fresenius USA, Inc. v. Baxter Intern., Inc.,*  2013 WL 3305736 (Fed Cir. 2013) holding that plaintiff had no cause of action in district court, despite prior district court rulings upholding validity of asserted claims, upon Federal Circuit affirming PTO's invalidity determination in reexamination proceeding ).  That is, the IPR proceedings may yield invalidity determinations that finally preclude Stambler from pursing some or all of his asserted claims against the Federal Reserve Banks, or any other party, thus conserving substantial judicial and party resources.  *See Semiconductor*, 2012 WL 7170593, at *2 ("[W]aiting for the outcome of the reexamination could eliminate the need for trial if the claims are cancelled or, if the claims survive, facilitate trial by providing the court with expert opinion of the [US]PTO and clarifying the scope of the claims.") (citation omitted); s*ee also Genzyme Corp. v. Cobrek Pharms., Inc.* 2011 WL 686807 at *3 (N.D. Ill. Feb. 17, 2011) (a stay is merited when the "suit will likely be dismissed if the reexamination results in effective invalidity of the patent").  Moreover, interim rulings that the PTO makes during an IPR proceeding may likewise encourage settlement among the parties or a reduction in the number of asserted claims and/or accused products.  *See id.* (a stay is merited when the "outcome of the reexamination may encourage settlement"); *see also Dennco, Inc. v. Cirone*, 1995 U.S. Dist. LEXIS 9988, at *3 (D.N.H. July 12, 1995) (granting motion to stay during the pending USPTO proceeding because the "stay might well result in a reduction in the complexity and length of

---

[21] *Spa Syspaystronic*, 2008 WL 1886020, at *3.

the litigation and may induce settlement without further court intervention").  Finally, still other

factors demonstrate that the IPR proceedings are highly likely to simplify the issues:

(a) Stambler's infringement contentions appear predicated on broad claim constructions, which render all asserted claims susceptible to invalidity challenges;

(b) The IPR petitions present the PTO with prior art and information that was never part of the PTO's original decision to issue the '302 or '541 patents; [22] and

(c) The Federal Reserve Banks' IPR petitions are further supported by Whitfield Diffie, a Stanford University Consulting Professor acknowledged as a world leading authority and pioneer in the field of cryptography.[23]

Stambler may argue that the number of claims the IPR process ultimately invalidates is

presently unknown and that, as a result, there is no guarantee that the issues will be simplified.

Such an argument would be incorrect.  Even if IPR results in invalidation of less than all asserted

claims, the record from the two IPRs will undoubtedly simplify and clarify the claim

construction process.  *See Pi-Net Int'l*, 2013 U.S. Dist. LEXIS 81570 at *6.  This is because the

PTO's resolution of validity challenges in IPR proceedings nonetheless requires it to make

determinations of claim scope. At a minimum, if the Court proceeds with claim construction

while IPR proceedings are pending, the Court risks both (1) expending significant effort to

construe claims that are ultimately found invalid, or (2) duplicating claim construction efforts of

the PTO, which will in this context (expired patents) follow the same claim construction

principles that district courts apply.  *Innolux Corp.,* Case No. IPR2013-00064 at 10 (("The

Board's review of the claims of an expired patent is similar to that of a district court's review.").

---

[22] The new references presented to the PTO include: CCIT Recommendation X.509: The Directory – Authentication Framework (1988); James Nechvatal, Public-key Cryptography (NIST Special Publication 800-2) (April 1991); D. W. Davies et al., Security for Computer Networks: An Introduction to Data Security in Teleprocessing and Electronic Funds Transfer, 254-332 (1989); U.S. Patent No. 4,868,877 to Fischer; and U.S. Patent No. 4,993,068 to Piosenka et al.

[23] *See* http://cisac.stanford.edu/people/whitfield_diffie.

### C.  The Third Factor:  The Timing Favors a Stay

The case remains at an early stage, with the *Markman* hearing currently set for January

30, 2014 and no defendant's trial is set to occur for many, many months.  More specifically, the

first trial setting is July 7, 2014, and if Stambler intends to pursue trial against more than one

Defendant, those trial settings will, as a practical matter, extend still farther into the future.  Fact

discovery has only recently begun with all parties having served initial written discovery

(including initial disclosures) and have begun document production.  No depositions have

occurred, nor have any deposition notices been served.  The parties have not yet begun to brief

claim construction, no motions are pending (other than a single motion to transfer in one of the

co-pending litigations), and neither Stambler nor the Federal Reserve Banks have asked the

Court to rule upon any motion before now.  *See Pi-Net Int'l, Inc.*, 2013 U.S. Dist. LEXIS 81570,

at *7 (granting stay of litigation where discovery was not complete, claim construction had not

occurred, and trial was one year away).  As another court aptly stated, "considering the general

time line of patent litigation, there is more work ahead of the parties and the Court than behind the

parties and the Court."  *See Tierravision, Inc. v. Google, Inc.*, 2012 WL 559993, at *2 (S.D. Cal. Feb.

21, 2012) (granting stay where *Markman* briefs were soon due and parties had exchanged proposed

claim constructions and extrinsic evidence).  The Defendants' requested stay here is consistent with

the stay granted in *Semiconductor*, which issued before the petitions for IPR at issue were instituted

by the PTO.  *See Semiconductor*, 2012 WL 7170593 at *1 (noting IPR petitions filed less than a

month before the court issued a stay order).

Finally, the two sets of IPR petitions were filed well within the one-year window

provided by the AIA, which Congress recognized as a necessary time period for defendants to

identify and understand the patent claims.  *See* 157 Cong. Rec. S5429 (daily ed. Sept. 8, 2011)

(statement of Sen. Kyl) (noting that "in light of the present bill's enhanced estoppels, it is

important that the statutory deadline afford defendants a reasonable opportunity to identify and understand the patent claims that are relevant to the litigation").

### D.  The Totality of Circumstances Favors a Stay.

All of the advantages of a stay pending IPX that courts have noted in cases such as *Datatreasury Corp.* and *GPAC, Inc.* are applicable here in the IPR context.  Those advantages include, but are not limited to: (1) consideration of prior art and expert testimony will be vetted by the Patent Trial and Appeal Board ("PTAB"), a panel of administrative law judges within the PTO possessing "particular expertise" on technology and validity issues; (2) this Court may avoid discovery problems relating to prior art and information incidental to invalidity defenses; (3) the IPR petitions target all asserted claims (and many others) from the '302 and '541 patents, raising the potential for effective invalidity of both patents and dismissal of this and other pending suits (with the exception of the suit against the Ally Bank defendants); (4) interim determinations and/or the PTAB's ultimate decisions may encourage a settlement without further draining the Court's resources; and (5) the IPR record will bear on other issues affecting trial, including claim construction, and may reduce the complexity and length of the litigation.

In addition, and perhaps most importantly, given the Federal Reserve Banks' unique functions and critical responsibilities within the United States central banking system, a stay would preserve substantial financial resources that are better directed to the benefit of United States taxpayers.  Moreover, the Federal Reserve Banks are charged with protecting the integrity and the security of national payment systems that Stambler has accused of infringement. Waiting a modest amount of time for IPR proceedings to unfold may very well obviate the need for burdensome and intrusive discovery, as well as any discovery disputes, that will distract and divert Federal Reserve Bank personnel from their primary responsibilities.

Considering all of this, the "totality of circumstances" likewise weighs heavily in favor of staying the case pending IPR.

## IV.    CONCLUSION

All of the relevant factors weigh in favor of staying the litigation.  Consequently, Defendants respectfully request that the Court grant the instant motion to stay all proceedings pending final exhaustion of all pending IPR proceedings.

Dated:   August 21, 2013

Respectfully submitted,

By:   */s/ Thomas B. Walsh, IV*
Thomas M. Melsheimer
melsheimer@fr.com
Texas Bar No. 13922550
Thomas B. Walsh, IV
walsh@fr.com
Texas Bar No. 00785173
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, Texas  75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)

Christopher O. Green
cgreen@fr.com
Benjamin Thompson
bthompson@fr.com
**FISH & RICHARDSON P.C.**
1180 Peachtree Street, NE, 21st Floor
Atlanta, GA 30309
404.892.5005
404.892.5002 (facsimile)

**ATTORNEYS FOR DEFENDANTS FEDERAL RESERVE BANK OF ATLANTA, FEDERAL RESERVE BANK OF BOSTON, FEDERAL RESERVE BANK OF CHICAGO, FEDERAL RESERVE BANK OF CLEVELAND, FEDERAL RESERVE BANK OF DALLAS, FEDERAL RESERVE BANK OF KANSAS CITY, FEDERAL RESERVE BANK OF MINNEAPOLIS, FEDERAL RESERVE BANK OF NEW YORK, FEDERAL RESERVE BANK OF PHILADELPHIA, FEDERAL RESERVE BANK OF RICHMOND, FEDERAL RESERVE BANK OF SAN FRANCISCO, AND FEDERAL RESERVE BANK OF ST. LOUIS**

By: */s/ M. Dru Montgomery*
J. Thad Heartfield
State Bar No. 09346800
E-mail: thad@jth-law.com
M. Dru Montgomery (Texas Bar No. 24010800)
E-mail: dru@jth-law.com
The Heartfield Law Firm
2195 Dowlen Road
Beaumont, Texas 77706
Telephone: 409.866.3318
Fax: 409.866.5789

Margaret M. Duncan
E-mail: mduncan@mwe.com
Ryan N. Phelan
E-mail:  rphelan@mwe.com
McDermott Will & Emery LLP
227 West Monroe Street, Suite 4400
Chicago, Illinois 60606
Telephone:  312.984.6476
Fax:  312.984.7700

**COUNSEL FOR DEFENDANT,
THE NORTHERN TRUST COMPANY**

By: */s/ Jeffrey L. Johnson*
Jeffrey L. Johnson
State Bar No. 24029638
Dawn M. Jenkins
State Bar No. 24074484
**DLA PIPER LLP (US)**
1000 Louisiana, Suite 2800
Houston, TX 77002
Telephone: 713-425-8400
Facsimile: 713-425-8401
jeffrey.johnson@dlapiper.com
dawn.jenkins@dlapiper.com

John M. Guaragna
State Bar No. 24043308
Brian Erickson
State Bar No. 24012594
Aaron G. Fountain
State Bar No. 24050619
**DLA PIPER LLP (US)**
401 Congress Avenue, Suite 2500
Austin, TX 78701-3799
Telephone:  512-457-7000
Facsimile:  512-457-7001
john.guaragna@dlapiper.com
brian.erickson@dlapiper.com
aaron.fountain@dlapiper.com

**ATTORNEYS FOR DEFENDANTS ALLY
FINANCIAL INC., and ALLY BANK**

| | |
|---|---|
| By: */s/ Christopher T. Blackford* <br> Eric H. Findlay <br> State Bar No. 00789886 <br> Brian Craft <br> State Bar No. 04972020 <br> Findlay Craft <br> 6760 Old Jacksonville Highway, Suite 101 <br> Tyler Texas 75703 <br> Tel. (903) 534-1100 <br> Fax (903) 534-1137 <br> efindlay@findlaycraft.com <br> bcraft@findlaycraft.com <br> <br> Michael A. Morin <br> John M. Williamson <br> Christopher T. Blackford <br> Jennifer K. Robinson <br> Finnegan, Henderson, Farabow, <br> Garrett & Dunner LLP <br> 901 New York Avenue, NW <br> Washington, DC 20001-4413 <br> Phone: (202) 408-4000 <br> Fax: (202) 408-4400 <br> michael.morin@finnegan.com <br> john.williamson@finnegan.com <br> christopher.blackford@finnegan.com <br> jennifer.robinson@finnegan.com <br> <br> **ATTORNEYS FOR DEFENDANTS** <br> **AMERIPRISE FINANCIAL, INC. AND** <br> **AMERIPRISE BANK, FSB.** | By: */s/ Benjamin K. Thompson* <br> Neil J. McNabnay <br> mcnabnay@fr.com <br> **FISH & RICHARDSON P.C.** <br> 1717 Main Street <br> Suite 5000 <br> Dallas, Texas 75201 <br> Phone: (214) 747-5070 <br> Fax: (214) 747-2091 <br> <br> Benjamin K Thompson <br> bthompson@fr.com <br> **FISH & RICHARDSON PC** <br> 1180 Peachtree Street NE <br> 21st Floor <br> Atlanta, GA 30309 <br> Phone: 404-724-2844 <br> Fax: 404-892-5002 <br> <br> **ATTORNEYS FOR DEFENDANT FIRST** <br> **CITIZENS BANK & TRUST COMPANY** |

21

Case 2:12-cv-00608-JRG   Document 73   Filed 08/21/13   Page 27 of 28 PageID #:  482

| | |
|---|---|
| By:  /s/ Todd C. Kinney | By:  /s/ Jonathan Giroux |
| Todd C. Kinney (*pro hac vice*) | Allan J. Sternstein |
| John P. Passarelli (*pro hac vice*) | Illinois State Bar Number 2728966 |
| James M. Sulentic (*pro hac vice*) | Jonathan Giroux |
| Sean P. Connolly (*pro hac vice*) | Illinois State Bar Number 6306024 |
| Kutak Rock LLP | Dykema Gossett PLLC |
| The Omaha Building | 10 South Wacker Drive, Suite 2300 |
| 1650 Farnam Street | Chicago, Illinois 60606 |
| Omaha, NE  68102-2186 | (312) 876-1700 Telephone |
| | (312) 876-1155 Facsimile |
| Gregory P. Love | asternstein@dykema.com |
| Stevens Love Hill & Holt PLLC | jgiroux@dykema.com |
| 111 West Tyler Street | |
| Longview, TX  75601 | William D. Cramer |
| | Texas State Bar Number 00790527 |
| **ATTORNEYS FOR DEFENDANTS** | Dykema Gossett PLLC |
| **FIRST NATIONAL OF NEBRASKA, INC.** | 1717 Main Street, Suite 4000 |
| **AND FIRST NATIONAL BANK OF** | Dallas, Texas 75201 |
| **OMAHA** | 214-462-6400 Telephone |
| | 214-462-6401 Facsimile |
| | wcramer@dykema.com |
| | |
| | Michael C. Smith |
| | State Bar No. 18650410 |
| | Siebman, Burg, Phillips & Smith, LLP |
| | 113 E. Austin Street |
| | P.O. Box 1556 |
| | Marshall, Texas 75671 |
| | Office: (903) 938-8900 |
| | (Fax): (903) 767-4620 |
| | michaelsmith@siebman.com |
| | |
| | **ATTORNEYS FOR DEFENDANTS FIFTH** |
| | **THIRD BANCORP AND FIFTH THIRD** |
| | **BANK** |

22

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on August 21, 2013, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Thomas B. Walsh, IV*

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that a telephone conference was held on August 20, 2013 between Tom Walsh and Chris Green, counsel for the Federal Reserve Banks, and Brent Bumgardner, counsel for Plaintiff Leon Stambler.  After discussion, counsel for Plaintiff Leon Stambler stated that the motion to stay is opposed.  This motion is therefore presented to the Court for resolution.

*/s/ Thomas B. Walsh, IV*